**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-0132-WJM-KMT

JOE HAND PROMOTIONS, INC.,

     Plaintiff,

v.

THE PLAYING FIELD, LLC, and
MICHAL NEPPL,

     Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Default Judgment ("Motion").  (ECF No. 9.)  For the following reasons, the Motion is granted.

**I. BACKGROUND**

**A.    Allegations in the Complaint**

The Court takes the following facts from Plaintiff's Complaint (ECF No. 1) which, as a result of The Playing Fields, LLC's and Michal Neppl's (jointly, "Defendants") default, are deemed admitted.

Plaintiff is a corporation that specializes in distributing and licensing premier sporting events to commercial locations such as bars, restaurants, lounges, clubhouses, and similar establishments.  (¶¶ 1, 7.)[1]  Defendant The Playing Field LLC operates the establishment known as The Playing Field located at 3958 N. Academy Blvd. #112,

---

[1] Citations to (¶ _), without more, are citations to Plaintiff's Complaint. (ECF No. 1.)

Colorado Springs, CO 80917 (the "Establishment").  (¶ 2.)  On August 17, 2019 and January 18, 2020, Defendant Michal Neppl was an officer, director, shareholder, member, and/or principal of the entity owning and operating the Establishment, had a right and ability to supervise the activities of the Establishment, and had an obvious and direct financial interest in the activities of the Establishment.  (¶ 3.)

Plaintiff held the exclusive commercial distribution rights to the broadcast of: (1) *Ultimate Fighting Championship 241: Daniel Cormier vs. Stipe Miocic 2*, including all bouts and commentary, which was telecast nationwide on April 17, 2019; and (2) *Ultimate Fighting Championship 246: Conor McGregor vs. Donald "Cowboy" Cerrone*, including all undercard bouts and commentary, which was telecast nationwide on January 18, 2020 (jointly, the "Programs").  (¶ 1.)  Plaintiff possessed the exclusive right to license and distribute each of the Programs to commercial establishments throughout the United States.  (¶ 8.)  The Programs' broadcast originated via satellite uplink and was retransmitted interstate to cable systems and satellite television companies via satellite signal.  (*Id.*)

Plaintiff entered into agreements with various commercial establishments in Colorado that allowed them to exhibit the Programs to their patrons in exchange for a fee.  (¶ 9.)  In consideration for these agreements, Plaintiff spent a significant amount of money to market, advertise, promote, administer, and transmit the Programs to those Colorado establishments.  (*Id.*)

Although Defendants could have purchased authorization to exhibit the Programs from Plaintiff, they chose not to contract with or pay a fee to Plaintiff to obtain the proper license or authorization to exhibit the Programs.  (¶ 10.)  Plaintiff never gave

Defendants' license, permission, or authority to receive and exhibit the Programs in their establishment. (*Id.*) Nonetheless, by unauthorized satellite transmission or receipt over a cable system, Defendants willfully intercepted or received the interstate communications of the Programs. (¶ 11.) Then, Defendants unlawfully transmitted (or assisted in doing so) the communications and published it to patrons in the Establishment. (*Id.*) Thus, without authorization from Plaintiff, Defendants exhibited the Programs to patrons in their establishment. (¶ 12.)

In doing so, Defendants pirated Plaintiff's licensed exhibition of the Programs and infringed on Plaintiff's exclusive rights while avoiding proper authorization and payment to Plaintiff. (¶ 13.) Such actions were committed willfully and with the intent to secure a commercial advantage and private financial gain. (*Id.*) At the time of the wrongful conduct described, Defendants' agents, servants, and employees were in fact their agents, servants, and employees and were acting within the scope of their employment and authority. (¶ 14.)

**B.     Procedural History**

Plaintiff filed its Complaint on January 15, 2021, alleging "Satellite Piracy/Cable Piracy" in violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 (generally referred to as "Satellite Piracy"), or alternatively 47 U.S.C. § 553 (generally referred to as "Cable Piracy"). (ECF No. 1.) Plaintiff requests that the Court: (1) enter judgment in favor of Plaintiff and against Defendants for statutory damages up to the maximum amount of $110,000 for each willful violation of 47 U.S.C. § 605, or alternatively, for statutory damages of up to the maximum amount of $60,000 for each willful violation of 47 U.S.C. § 553; (2) award Plaintiff its attorneys' fees, interest, and

3

costs of suit under 47 U.S.C. § 605(e)(3)(B)(iii) or, alternatively, pursuant to § 553(c)(2)(C); and (3) such other relief to which Plaintiff may be entitled.  (*Id.* at 5.)

Defendants were served with a copy of the Summons and Complaint in this case on February 15, 2021.  (ECF No. 5.)  Thus, Defendant was required to file an answer no later than March 8, 2021 under Federal Rule of Civil Procedure 12(a)(1)(A)(i).  After Defendants failed to appear or otherwise defend the lawsuit, Plaintiff obtained the Clerk's Entry of Default on March 19, 2021.  (ECF No. 7.)  On March 22, 2021, United States Magistrate Judge Kathleen M. Tafoya entered an order directing Plaintiff to file a motion for default judgment by April 16, 2021.  (ECF No. 8.)  In accordance with Judge Tafoya's order, Plaintiff filed the Motion on April 16, 2021.  (ECF No. 9.)  As of this date, Defendants have not filed an answer or any other responsive pleading in this matter.

## II. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit.  Fed. R. Civ. P. 55(a).  Default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party" in order to avoid further delay and uncertainty as to the diligent party's rights.  *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

## III. ANALYSIS

Before granting a motion for default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting

defendant.  *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986).

Next, the Court should consider whether the well-pleaded allegations of fact—which are

admitted by the defendant upon default—support a judgment on the claims against the

defaulting defendant.  *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL

765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains

for the court to consider whether the unchallenged facts constitute a legitimate basis for

the entry of a judgment.").

**A.    Jurisdiction**

The Court finds that it has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331 because Plaintiff asserts a claim under a federal statute.  Additionally,

the Court may exercise personal jurisdiction over Defendants because they operate The

Playing Field, LLC in Colorado Springs, Colorado, and the alleged statutory violations

took place in Colorado.  (¶¶ 2–3.)  *See Dennis Garberg & Assoc. v. Pack–Tech Int'l

Corp.*, 115 F.3d 767, 773 (10th Cir. 1997) (plaintiff need only make a prima facie

showing of personal jurisdiction if the motion for default judgment is decided only on the

basis of the parties' affidavits and other written materials).

**B.    Substantive Liability**

Plaintiff asserts violations of 47 U.S.C. §§ 553 and 605.  (¶ 4)  Section 553

provides that "[n]o person shall intercept or receive or assist in intercepting or receiving

any communications service offered over a cable system, unless specifically authorized

to do so by a cable operator or as may otherwise be specifically authorized by law."  47

U.S.C. § 553(a)(1).  Likewise, Section 605 states:

> No person not being authorized by the sender shall intercept
> any radio communication and divulge or publish the

existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

42 U.S.C. § 605(a)(6).

Plaintiff alleges in its Complaint that it had the exclusive right to broadcast the Programs on August 17, 2019 and January 18, 2020.  (¶¶ 1, 8, 13.)  Plaintiff further asserts that, without obtaining permission from Plaintiff and "by unauthorized satellite transmission or . . . unauthorized receipt over a cable system," Defendants "willfully intercepted or received the interstate communication of the Programs" and then unlawfully transmitted, divulged, and published said communication to patrons at The Playing Fields in Colorado Springs, Colorado.  (¶¶ 2(d), 11.)

Because Defendants could only have intercepted the broadcast through illegal means (¶ 10 (noting that Plaintiff never gave Defendants "license, permission or authority to receive and exhibit the Programs"); ECF No. 9-1 ¶ 16 (affidavit by Joe Hand, Jr., President of Plaintiff, stating that Plaintiff's programming "cannot be mistakenly, innocently, or accidentally intercepted")), the Court finds Plaintiff's allegations sufficient to establish liability under §§ 553 and 605.  *See Joe Hand Promotions, Inc. v. Purple Pig, LLC*, 2018 WL 4360538, at *2 (D. Colo. Sept. 13, 2018) (finding that plaintiff met the statutory requirements for liability under §§ 553 and 605); *J & J Sports Prods, Inc. v. Twiss*, 2012 WL 1059990, at *3–4 (D. Colo. March 2, 2012) (finding that plaintiff had met the statutory requirements for liability under §§ 553 and 605 where defendant exhibited the broadcast without authorization, defendant could only have intercepted the broadcast by illegal means, and the broadcast was

transmitted by cable and satellite), *recommendation adopted by* 2012 WL 1060047 (D.

Colo. Mar. 29, 2012); *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179,

1183 (D. Colo. 2008) (finding allegations sufficient to establish violations of 47 U.S.C.

§§ 553 and 605 where plaintiff alleged that defendants were not authorized to broadcast

the program in their restaurant, the broadcast could only have been accomplished

through illegal means, and the services intercepted or received were also distributed via

cable).

**C.   Vicarious Liability**

Plaintiff also names Michal Neppl as a Defendant in his individual capacity.  (¶ 1.)

In order to establish vicarious liability of an individual for a violation of 47 U.S.C. § 605,

the plaintiff need only show that the individual defendant had the "right and ability to

supervise" the violations, and that he had a "strong financial interest" in exploiting the

copyrighted materials.  *See J & J Sports Prods., Inc. v. Cervantes*, 2008 WL 583879, at

*3 (D. Colo. Jan. 30, 2008); *J & J Sports Prods., Inc. v. Benson*, 2007 WL 951872, *7

(E.D.N.Y. March 27, 2007); *see also J & J Sports Prods., Inc. v. Meyers*, 2007 WL

2030288, *3 (S.D.N.Y. July 16, 2007).

The Complaint alleges that, on August 17, 2019 and January 18, 2020,

Defendant Neppl acted as "an officer, director, shareholder, member and/or principal of

the entity owning and operating" the Establishment.  (¶ 3.)  Plaintiff also alleges upon

information and belief Neppl "had a right and ability to supervise the activities of the

Establishment" and that he had "direct financial interest in the activities of the

Establishment."  (*Id.*)  Additionally, Plaintiff presented alleged that Neppl was the owner

of the Establishment at the time the Programs were broadcast.  (ECF No. 9-5.)

These allegations, deemed admitted as a result of Defendants' default, establish Defendant Neppl's individual liability under Section 605.  *See Meyers*, 2007 WL 2030288, at *3; see also *Benson*, 2007 WL 951872, at *7 ("The complaint also alleges that, upon information and belief, Benson and Melvin were the individuals with supervisory capacity and control over activities occurring within the Establishment on December 3, 2005."); *Meyers*, 2007 WL 2030288, at *3 ("The complaint also alleges, upon information and belief, that Ms. Meyers had supervisory capacity and control over She Sha's activities on July 16, 2005, and received a financial benefit from those operations."); *J & J Sports Prods., Inc. v. Rodrigues*, 2007 WL 1726462, at *8 (E.D.N.Y. April 19, 2007) ("Plaintiff's complaint names both KACU and Juan Rodrigues as an officer, director, shareholder and/or principal of KACU, and as the person with 'supervisory capacity and control over the activities occurring within the establishment' on the night of the Event").  Defendant Neppl was the principal of The Playing Field and had control over its activities on the days the Programs were broadcast and received a financial benefit from those activities.  Accordingly, Defendant Neppl may be held jointly and severally liable along with The Playing Field, LLC for violating 47 U.S.C. § 605.

**D.   Damages**

Although Plaintiff has established liability under both § 553 and § 605, Plaintiff may only recover under one section.  *See Gutierrez*, 544 F. Supp. 2d at 1184 (stating that "recovery under both section 553 and section 605 is improper").  Plaintiff elects to recover damages under Section 605.  (ECF No. 9 at 5.)

Section 605 allows recovery of statutory damages in an amount "not less than $1,000 or more than $10,000" for each violation of the statute.  47 U.S.C. §

8

605(e)(3)(C)(i)(II).  "[M]ost cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation."  *Gutierrez*, 544 F. Supp. 2d at 1184 (quoting *Garden City Boxing Club v. Perez*, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006)).

Plaintiff seeks $10,000 in statutory damages for the violations.  (ECF No. 9 at 6.)  In assessing the reasonableness of that amount, the Court considers the licensing fee that Defendants would have paid to Plaintiff based on the potential occupancy of the space, any cover charge paid by the patrons in attendance on the night of the Program, and any profits associated with the purchase of food and drink during the Program.  *See J & J Sports Prods., Inc. v. Valdovines*, 2012 WL 3758841, at *3 (D. Colo. Aug. 28, 2012) (considering both licensing fee and cover charge in determining statutory damages); *Twiss*, 2012 WL 1059990, at *5–6 (recommending award of maximum amount of statutory damages based on licensing fee, cover charge, and "the presumed profit associated with the patronage of 90 people (in terms of food and drink)").  The Court is also cognizant that "unauthorized access to [programming] reduces demand and depresses the prices that plaintiff can charge for sublicenses." *Id.*, at *6 n.5.  The amount of statutory damages should be roughly proportional to the loss suffered, and Plaintiff has the burden of showing that it is entitled to any award greater than the statutory minimum.  *DIRECTV, LLC v. Taylor*, 2014 WL 3373448, at *3 (D. Colo. July 10, 2014) (quoting *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001)).

Here, Plaintiff states that its commercial subscription fee would have been $3,000 for an establishment with a maximum fire code occupancy of between 301 and

350 persons.  (*See* ECF No. 9 at 10; ECF No. 9-1 ¶ 8; ECF No. 9-3 (Rate Card for

DirecTV Pricing for subscription only packages based on fire code occupancy rates);

*see also* ECF No. 9-4 at 1 (affidavit of Shawn Fuller of Forthwith Tactical Security and

Investigations expressing his opinion that maximum occupancy of The Playing Field is

350 people).)  Plaintiff also presents evidence that the January 18, 2020 Program was

exhibited on seven 50-inch television screens, that there was no cover charge, and that

there were approximately seventy patrons in the Establishment at the time of the

Program.  (ECF No. 9-4 at 1.)  Finally, Plaintiff asserts that it has incurred "damage to

its goodwill and reputation and loss of its right and ability to control and receive fees for

the transmission" of the events as a result of Defendants' unlawful conduct.  (ECF No. 9

at 8.)

Considering these factors and the awards in other cases, the Court finds that

$10,000 in statutory damages constitutes appropriate compensation for Defendants'

violations of Section 605(a).  *See, e.g., Zuffa LLC v. Gonzalez*, 2017 WL 6016403, at *3

(D. Colo. Nov. 14, 2017) (awarding $5,000 in statutory damages where the sublicensing

fee would have cost $2,250, defendants exhibited the broadcast on five of their six

televisions, and the occupancy of the restaurant was between 101 and 200 people);

*Taylor*, 2014 WL 3373448, at *3 (awarding $1,500 where plaintiff had not offered any

evidence of the "profit that it was deprived of" and thus had failed to show an entitlement

to damages significantly greater than the statutory minimum); *J & J Sports Prods, Inc. v.

Rivas*, 2012 WL 3544834, at *2 (N.D. Okla. Aug. 16, 2012) (finding $2,500 to be an

appropriate award of statutory damages where the sublicense fee would have been

$2,200, no cover fee was charged, there were no more than fifteen patrons in the

restaurant at the time of the broadcast, and there was no evidence of a financial benefit

to the defendant or of repeated violations of the statute).

In addition to statutory damages, Plaintiff requests enhanced damages of

$30,000 (ECF No. 9 at 11) pursuant to Section 605(e)(3)(C)(ii), which states:

> In any case in which the court finds that the violation was
> committed willfully and for purposes of direct or indirect
> commercial advantage or private financial gain, the court in
> its discretion may increase the award of damages, whether
> actual or statutory, by an amount of not more than $100,000
> for each violation of [Section 605(a)].

Courts typically consider the following factors in determining whether a

defendant's willful conduct calls for enhanced damages: repeated violations over an

extended period of time; substantial unlawful monetary gains; significant actual

damages to plaintiff; defendant's advertising for the intended broadcast of the event;

defendant's charging a cover charge or charging premiums for food and drinks.  *See*

*Taylor*, 2014 WL 3373448, at *3 (citing *Gutierrez*, 544 F. Supp. 2d at 1185).

Here, Plaintiff has provided evidence showing that Defendants willfully used the

Programs, which they illegally accessed, for financial gain and that they advertised the

August 17, 2021 Program.  (ECF No. 9-5 ¶ 3; ECF No. 9-6.)  Although there is no

evidence that Defendant charged inflated prices for food or drink during the Program,

the Court believes that an enhanced award is appropriate for the purpose of deterring

any future violation of Section 605.  *See Taylor*, 2014 WL 3373448, at *3 (citing

*Gutierrez*, 544 F. Supp. 2d at 1185).  While awarding the maximum amount of $100,000

in this case would be grossly excessive, the Court believes, based on the record in this

case, that an enhanced award in the requested amount of $30,000 is appropriate.  Such

an award, treble the statutory damages, adequately addresses the willfulness of

Defendants' illegal conduct.  *See Purple Pig, LLC*, 2018 WL 4360538, at *4 (awarding enhanced damages that were treble the statutory damages); *Taylor*, 2014 WL 3373448, at *3 (same); *Gutierrez*, 544 F. Supp. 2d at 1185 (same); *Twiss*, 2012 WL 1059990, at *7 (awarding enhanced damages that were slightly over treble the statutory damages).

### E.     Attorneys' Fees and Costs

As the prevailing party under 47 U.S.C. § 605, Plaintiff is entitled to its reasonable attorneys' fees and costs.  47 U.S.C. § 605(e)(3)(B)(iii).  By affidavit, Plaintiff's counsel requests that the Court permit it to file a fee application for attorneys' fees from Defendants.  (ECF No. 9-5 at 2.)  In addition, Plaintiff's counsel states that it incurred costs of $402 to file the action and $195 to effectuate service in this action. (*Id.*)

The Court will permit Plaintiff to file a fee application to recover reasonable attorneys' fees.  Further, the Court finds Plaintiff's costs are reasonable and will award them to Plaintiff.  *Taylor*, 2014 WL 3373448, at *4 (awarding $1,005 for filing fees and service of process).

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Plaintiff's Motion for Default Judgment (ECF No. 9) is GRANTED;

2.     The Clerk shall enter DEFAULT JUDGMENT in favor of Plaintiff and against The Playing Field, LLC and Michal Neppl in the amount of $40,597, consisting of:

   a.     statutory damages in the amount of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II);

      b.      enhanced damages in the amount of $30,000 under 47 U.S.C. §

            605(e)(3)(C)(ii); and

      c.      $597 in costs under 47 U.S.C. § 605(e)(3)(B)(iii); and

3.     By **December 7, 2021**, Plaintiff shall submit all documentation required by rule and applicable case law of the reasonable amount of attorneys' fees expended in this matter and in support of a separate motion for same.

Dated this 23rd day of November, 2021.

BY THE COURT:

William J. Martinez
United States District Judge